310-0530, Auto Owners Insurance Company, et al, Appellant Bradley Jean Blanc v. Thomas Callaghan and Lee Michael O'Connor. Counsel, you may proceed. Proceed. May it please the court. My name is Bradley Jean Blanc, and I represent the plaintiff appellant in this matter, Auto Owners Insurance Company, as subrogee of John Ellis. At this time, I'd like to request three minutes for rebuttal. This appeal stems from the trial court in the Circuit Court of Will County. They're granting defendant Thomas Callaghan's motion to dismiss, pursuant to Section 2615 of the Illinois Code of Civil Procedure, for failure to state a cause of action. Now, we are here today appealing this trial court order for two reasons. First, that the parties intended to place the loss of this loss, due to a negligently caused fire, upon the tenant. And secondly, the tenant, Mr. Callaghan, should not be considered a coinsured under the terms of the landlord, Mr. Ellis' insurance policy with auto owners. Now, you agree that this all is a question of intent, right? Between the landlord and the tenant, right? I do. I do. And the Supreme Court agreed with that as well in Dix v. Frambois. The court found that although... This agreement is pretty short, isn't it? In what way, Your Honor? I mean, it's not a very long agreement. True. It's, I believe, four single paragraphs. And in this case, the landlord's the one who got the insurance. Yes, that is correct. However... And if it was the responsibility of the tenant, he didn't impose that responsibility on the tenant to get insurance. We feel that the lease imposes responsibility on the tenant for any and all damages above and beyond the $2,500 security deposit. And what section of the lease agreement says that? I believe it's section three, which includes the security deposit section along with the yieldback clause that both the tenant and the landlord agreed to. The yieldback clause states that the tenant shall return the demise premises in good condition and any liability for damages to the premises will go above and beyond the $2,500 security deposit. And from that, you read in fire damage? Yes. I read any and all damages. Now, there's no case that has ever gone that far, is there? I believe that the Dix case allows you to read the lease as a whole. And in the Dix case, the Supreme Court read the lease as a whole and found that the tenant wasn't liable. Dix found that the general rule was a landlord can sue a tenant for negligently caused fires. However, in looking at that lease, that specific lease, they found that the tenant wasn't going to be liable because the parties intended to exculpate him. Now, that lease did not include a yieldback clause. The Supreme Court in Dix specifically stated that in their opinion. However, in our case, they do have a yieldback clause. They do have a security deposit clause. There's no exception for fire damage or water damage or any other sorts of damages in this yieldback clause. And it's not even limited by the amount of the security deposit. It specifically states, and the landlord and tenant both signed this lease, it states that the tenant will be liable for all damages above and beyond the $2,500 security deposit. But there wasn't a provision that the tenant had to provide fire damage insurance. There was no provision that either party had to provide fire damages insurance. Now, in these other cases that, in Illinois, most such as Town Realty v. Schaffer or Stein v. Arnold Todd, as is in my brief, the lease provisions included fire provisions and insurance provisions. And the court looked at those provisions, finding that the landlord had to provide insurance for this sort of loss. Now, this is completely different from our case so far. So, as I was saying, the general rule, and I don't think this can be stressed enough, is that in Dix, in the Supreme Court, agreed with this, that a landlord may sue a tenant for negligently caused fire. Now, although there was no yieldback clause, as I stated earlier, in Dix, that is one of the things that the Dix court rested upon, was that there was no yieldback clause. In our case, there was. And it held that, without exception or limitation, the tenant was to be liable for any damages to the demise premises. Therefore, the tenant can be liable for the fire in question. Now, as I discussed with you earlier, Justice Carter, not only did the parties intend for the tenant to be liable for the loss such as this, negligently caused fire, the tenant isn't co-insured under the landlord's insurance policy with my client auto owners. Although the Dix does state that an insurance company cannot subrogate against its own insured or anyone else with co-insured status, the courts haven't specifically held that the payment of rent in and of itself brings co-insured status upon a tenant. The Dix court was very specific that not only about the general rule, but also in the specific particular facts of the case, is what I believe the language they used. In the specific facts of the case, the payment of rent was found to bestow co-insured status upon the tenant. Now, in this case, this just isn't true. But under Cincinnati insurance, that case, doesn't it specifically say if the owner, the landlord, purchases insurance and the tenant becomes a co-insured, by the virtue of them insuring this property when they purchase that, the tenant becomes the co-insured and the insurer is precluded from suing the tenant for something like that? Well, as a preliminary note, Cincinnati versus DuPlessis is a second district case, so it's not necessarily binding upon your honors. However, the lease in DuPlessis required the landlord to carry fire insurance. This isn't the case in our situation. The landlord was just lucky that he carried fire insurance on the demise premises. But him and the tenant never agreed that he would carry the insurance. The tenant signed the lease stating that he was going to be liable for any damages. Therefore, it was up to the tenant to possibly procure insurance for any of the damages that he caused, including the fire in question, the fire that plaintiff alleged in its first amendment complaint. You're basically saying the lease says and the common law is that the tenant is responsible for damages caused by the tenant's alleged negligence, correct? That is correct. And you got a lease that expressly states that, right? Yes. Okay. Now, although Dix does have its holding in favor of the tenant in finding that they're not liable, although I disagree with how it went, the decision and which party came out on top, the reasoning is strong in that you need to look at specific facts, specific lease provisions, and you need to look at the intent of the parties as a whole. You've got to look at the analysis of Dix, right? I agree with that. Did they abrogate that rule that the tenant is liable for his own negligence? Yes, they did. They said the general rule. They reinstated it. They did. Yes. As well as, but they did leave open an exception for, let's say, the party specifically said the landlord is going to carry fire insurance, the landlord will deal with loss by fire. There are Illinois cases, including Cerny-Picus, where fire damage specifically was an exception in that yield-back clause. And the defendant, Mr. Callahan, relies on Cerny-Picus in finding that the tenant isn't liable. However, there's clear factual differences between Cerny-Picus and the case at bar. Although Cerny-Picus did have a yield-back clause, its yield-back clause is substantially different from the yield-back clause in question. Its yield-back clause had fire and water damage accepted. In our case, the yield-back clause is for any and all damages above and beyond the amount of the security deposit of $2,500. Now, I would like to, as I know the third district hasn't specifically dealt with this co-insured status issue since the Dick's case. So there are other illustrations in Illinois courts. However, some of which I've already discussed, such as Cerny-Picus, DuPlessis, Stein, and Tom Realty. And I just wanted to make the court aware that these are illustrations of this co-insured issue, and whether or not somebody by mere payment of rent automatically is a co-insured. Now, if you look at Dick's, you have to look at the specific facts of the case, the specific lease provisions. And all of these are clearly distinguishable from Dick's and from the case at bar. Such as Cerny-Picus, like I said earlier, fire was an exception in that yield-back clause. Therefore, the court inferred that since the tenant wasn't to be liable for fire and water damage regarding the yield-back clause, it was up to the landlord to do so. Therefore, the court found that the tenant couldn't be held liable against the landlord for a negligently caused fire. Also, DuPlessis, as we stated earlier, required the landlord to purchase fire insurance. Town Realty v. Schaeffer, fourth district case in 2002, is also distinguishable because it required insurance, the tenant, to carry insurance for personal property, not for fire. And the court inferred that if some insurance was required of the tenant, that would have been part of the lease that other types of insurance would have been included as well. It wasn't included. The court inferred that it was up to the landlord to do so. Finally, the Supreme Court in 1968 held that in Stein v. Yarnell-Tye In that case, it said that the tenant was obligated for what? In Stein v. Yarnell-Tye? It's the one you just finished. Oh, in Town Realty. It distinguished it had personal property. It required renter's insurance for personal property. Okay, that was required in the lease. In Town Realty v. Schaeffer? Yes. Yes or no? Yes, it was? In Stein v. Town Realty v. Schaeffer. So the court reasoned since that was specifically allocated to the tenant, the implication is the rest is allocated to the landlord, right? That is correct. In our lease, there was no insurance provision. The only loss allocation provision was the Yield Back Clause. And like I stated earlier, it was required of And that put the burden on the tenant. Yes, that is correct, Your Honor. I feel that these illustrations of this co-insured issue as to whether a tenant is made a co-insured just by payment of rent, along with obvious intent of the parties to hold the tenant liable for such damages, it is right, therefore, for this court to reverse the trial court's decision and allow this cause of action to stand, remand the case to the District Court of Will County for further proceedings. Thank you. Thank you, Counselor. Counselor, you may proceed. Good morning. May it please the Court. I'm Michael O'Connor. I represent the appellee, Thomas Callahan, who is the defendant in the trial court action. It is the position of Mr. Callahan that the trial court was correct in their ruling based on the Dix case that the insurance company as subrogate of the landlord could not state a cause of action. Trial court dismissed the complaint based on the Dix case. In Dix, the Supreme Court holds that we have to look at the intent of the lease to determine the responsibilities as to who is to have fire insurance for the premises. I believe that intent can be determined by reading the case law. Excuse us, sir. Sorry. No. Could you tell them whatever that noise is out there? Does it turn it down or off? Is the noise coming from this thing over here? I saw this thing over here. There. It sounds like it's coming out of it. I think it's coming from a piece of equipment over here. Oh, that's it. Okay. We're sorry. That can be... It's off now. That can be distracting. Sorry about that. As I was mentioning, the Dix case says that the court is to look at the lease. That's the responsibility of the court to look at the lease and to determine the intent of the parts. After reading the case law on this, I think the intent of the parties can be inferred from the reasonable expectations of both the tenant and the landlord as to what their obligations are under this lease. I would suggest that the case law indicates that when a tenant rents a piece of property, he doesn't have the realistic expectation that he's responsible for providing fire insurance to the leased premises. I would suggest to the court that the tenant reasonably relies upon the landlord who owns the property that they will obtain fire insurance. I know the Cincinnati insurance case was referenced. I believe that was an oral lease, and I don't think there was a requirement in that for a landlord to obtain the insurance. The Cincinnati insurance case, I believe it was Justice Bowman, indicates that leases are really simple contracts. Tenant pays some rent. Landlord gives shelter. That's generally what a lease is all about. Well, that's against the traditional common law rule, isn't it? It is, Judge. Aren't you charged with knowledge of the law? Judge, there's conflicting opinions, I believe, in Illinois whether the common law rule applies or whether the courts are getting more towards the implied co-insured rule that we saw in the case from Oklahoma called Sutton v. Johndahl. That case kind of established an implied co-insured rule, which is contrary to the common law, which, Justice Holdren, you mentioned. So they are in conflict. I agree with that. But I think what the Sutton rule and what Illinois courts have been doing, and I think Dick's kind of took the middle line, I think. I think they didn't go all but straight with common law, nor did they adopt the Sutton rule. But they certainly say the common law still prevails when you look at the lease. I think Dick's, or I would argue that Dick's in that case, they didn't want to overrule the common law and go as far as saying Sutton. So they took kind of the middle ground approach, which I believe is let's look at each lease on a case-by-case and let's determine the intent of that lease. That's where I believe the Dick's case lands. Here in the 3rd District, we have two cases on this subject that predate Dick's. So then we have to start talking about lease, not talking about what generally we think, finger in the wind, people think or don't think. Correct. We have two parties who signed a lease here and a yield-back clause. Correct. So now we've got to focus on that land. Yes. Thank you. I'd like to address that. The yield-back clause in this case is contained within the security deposit provision. And if you notice, this is a document drafted by the landlord. I mean, he's the one that drafted it. He's the one that gave it to the tenant. And so he has really, I think, our one case, the town realty case, decided a no-two goes the farthest in saying that, you know, of course, if we have a lease, it should be the landlord who should make it clear and beyond question that there's a responsibility on the tenant to obtain fire insurance. The yield-back clause in this case deals with a security deposit, which is like $2,500, I think, what our lease indicates. And it talks about, you know, damage to the premises. You know, maybe a carpet gets ripped. Maybe there's a hole in the wall. Maybe an appliance isn't prepared. I think what our case law says. Did it specify those things? I think it said it had to be returned in a clean condition. The yield-back clause that we're dealing with goes back in the second sentence or so to go back and say it should be returned in a clean condition, which, you know, generally I would say, you know, that's what tenants expect. The landlord's holding on to $2,500. I have to return this in the same shape that I did less ordinary wear and tear. I would ask the court, how should a tenant know that he has to protect himself from a catastrophic loss based on that provision? This claim, they're seeking from my client $250,000. Thomas Callahan, I think what the case is, I think the case law is out to protect the tenants in these situations. Callahan has to know that, okay, he's got his $2,500 security deposit at risk, but Mr. Callahan, you also could be liable for a quarter-of-a-million-dollar loss. I mean, so I think what the Illinois courts are saying is, you know, if the landlord's going to make the tenant responsible for, you know, catastrophic loss, then that should be clear to him, that he should know that. And that's what I think the court's responsibility is, is to look at these leases and to say what is the spirit, what is the intent. There's, you know, a landlord has a piece of rental property that he knows he's going to lease to tenants. So the people that are occupying the premises is a tenant. The landlord, and this happened in this case because it's a subrogation case, went out and purchased the fire policy. So that shows that he intended to cover fire losses because he bought the policy. So he went out and he obtained it, and that shows the intent that Dick says that the court should look at. And the other thing, too, is the insurance company accepted this risk. They knew that the people that were occupying Alice's rental property is going to be a tenant. And that's where that coinsured comes in, because generally, you know, insurance companies can't sue their own insurers, who are generally a homeowner who owns a house. And that reasoning applies in this case because the insurance company who accepts the premium and accepts the risk of insuring tenants shouldn't be able to go against that tenant for fire losses. I mean, we're talking about, you know, a strictly drawn case here that's dealing with fire insurance. From a practical standpoint, I believe the court needs to ask itself, how can a tenant go out and purchase fire policy for a premises that it doesn't own? I noticed driving in here, there's many old homes around here. The actual probably market value of these homes may be, you know, let's just say $50,000, but what would the replacement cost be? If it burned to the ground and it had to be rebuilt, does the tenant then need to go out and purchase either a stated value policy? Will this older house, because it has an old roof, old furnace, old electrical? You're insulting the property values of Ottawa. You should see how high they are. You're from Schaumburg, I guess. I mean no disrespect, Your Honor. The court has to pay a lot more than that. I understand that. I mean no disrespect. I know. I was just saying an older home as opposed to the replacement cost. So a tenant would need to go out and get that. And a more, I think, extreme example of that is if there's a building with, let's say, 50 units in it, does the tenant who leases a unit, is he responsible for providing coverage for the entire building? If you have 50 tenants in an apartment building, then does that apartment building get insured 50 times for, let's just say, like a million dollars? So, I mean, there's that whole, I think that's more along the economic waste analysis, and I don't think that's practical. I believe that the case law in Illinois is moving more towards the implied co-insured rule, but Dix leaves open the- Well, but you know what? We still have to follow the Supreme Court. Correct. Okay. We've got that second district case that's out there in the horizon. Okay. But Dix says that we have to show that the lease as a whole shows that the party's intended to expropriate the tenant from the tenant's responsibility. Okay? Correct. See, it's arguing the other side of the coin. That's what Dix is saying. And what in this lease shows that the party's intended to expropriate the tenant from his responsibility for his own negligence? I think the lease did not address that issue as to fire damages. Fire damage is a unique area of the law. It's a unique area of insurance. And it would be my argument that this lease does not address that situation as to the responsibility for negligently caused fires. If the lease is silent, then it is up to the court to interpret the intent of the lease. And I believe looking at this lease and based on the body of case law that we have to rely on, I would say this yield-back clause merely talks about minor duties that are on the tenant to return the property so the carpeting's good, there aren't holes in the walls, the refrigerator works. It doesn't address the issue of who's responsible in the event that the house burns down due to fire. And so that's why the court came up with Dix, which I think is they wanted to find an approach that can adhere to the common law, but then also contemplates the more contemporary view of the tenant being an implied co-insured. And I think that implied co-insured rule, based on the realities, we see a lot of that written in the opinions, the realities of modern-day renting, where generally you have landlords having rental property where they intend to put tenants in, they go out and they get fire policies like they did in this case, and they're intended, the intent there, if they go out and get the policy as the intent is there, I'll cover the fire loss because I'll buy the policy because I own the policy. And that's what a reasonably prudent landlord would do. And I don't think a reasonably prudent tenant who leases a piece of property thinks he's or she is responsible for obtaining fire insurance for that. I think they have in the law a basis to rely on the landlord obtaining that. So I think in this case, I believe that the circuit court correctly decided the issue based on the existing case law and Dix as the controlling law. Thank you. Mr. O'Connor. Mr. O'Connor is correct. Dix is the controlling law. And Dix specifically states that a landlord may sue a tenant, generally speaking, unless the terms of the lease evince the intent of the parties to exculpate the tenant from any liability. And I think that's a good point. Now, you know, Freeman in his concurrence states that the majority opinion has really returned silent, sub rosa or sub cilential to Anderson. Earlier at Appellate Court, the case had said the tenant is considered a co-insurer, even in the absence of express statements. And Freeman goes on to say what he thinks the majority is doing, which is, as to the argument from your opponent, implicitly saying that people can be co-insurance unless there's something more expressly saying they're not co-insurance when the landlord has the insurance. And the dissent in the Dix case explicitly states that the majority is abrogating the common law general principles and finding co-insurance. That's what the dissent says. And then pretty strongly that arriving at this, the majority points out, I mean, that the majority is establishing a different rule. And, in fact, that's what bothers the dissent. The dissent says the public is better served, you know, the other way. But if you take those, the special concurrence and the dissent at their word, Dix is saying a lot more than to them. That's correct to the dissent and the concurrence, but that's not the opinion of the court. Right. And the opinion of the court is that there is a general rule, and then you need to look at the lease to make sure that that general rule can apply. And then you look at the intent of the lease and so on. Like on this lease you have the people, the landlord, obtain insurance. Not pursuant to the lease. That's him being a prudent individual. He also had Mr. Callahan sign that same lease that says, which is part of the record, he has a $2,500 security deposit and he will be liable for any and all damages, even which go above and beyond that security deposit. I feel that that evinces the intent of the parties. Unlike any sort of reliance, as Mr. O'Connor wanted to discuss reliance upon, it's reasonable for the tenant to believe that he doesn't have to carry insurance. When he's signing that lease, it says his liability might go above and beyond. That's why. What does it say? I mean, the opposing counsel is saying, oh, come on, let's look at this. Yeah, any damages. But then we go down here and we start talking about limited to the amount. The security is not limited. Okay. But then we start going into specifics here like stoves, refrigerator, blinds, doors, carpeting, walls. That sort of thing. I believe that those are two separate clauses of the same paragraph, however. It says tenant shall pay a landlord in trust the sum of $2,500 to be held in a non-interest bearing security deposit to pay for any damages which tenant, their guests, or invitees may inflict upon the dwelling unit. Right. Tenant's liability is not limited to the amount of the security deposit. Sure. And then it goes on, and then it goes to other specifics of this yield back clause. The yield back clause has the don't burn the carpet, don't tear down the blinds, don't cause stupid kitchen fire or the like. But it also states that the tenant will be liable for any damages that it inflicts upon the dwelling unit. And I think that this goes with the general rule in finding that the landlord can sue a tenant, and then looking at the lease as a whole, it states that the tenant will be liable. So you're saying the tenant will return an entire home, apartment, including, and we have a lot of specifics, and as clinging condition is when received, right? Yes, that is correct. That's not getting so specific that leading the tenant into believing, well, I don't have to worry about destruction. I believe looking at that clause along with the beginning clause of that section for security deposit, couple those together, I believe that the landlord has a cause of action against the tenant for these damages, and therefore, due to the doctrine of subrogation, its insurance company, Auto Owners, has a cause of action. Yeah, I mean, we're not really talking about insurance. We're just talking about does the landlord have the right to go and sue the defendant? Absolutely. Defendant's language? Absolutely. In burning down his property? Yes. Okay. Counsel, that's one minute. So, therefore, we ask that you reverse the trial court's decision, Judge Powers's decision, and allow this cause of action to stand. Thank you, Counsel. Thank you, Your Honor. Court will take this case under advisement.